UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
JOSE SHOMO                                          :
                Plaintiff,             :
                                       :
v.                                                  :
                                                    :
BARBARA FURCO, Nurse; MARY                          :
GENOVESE, Doctor; WILLIAM J.                        :
CONNOLLY, Superintendent; PAULA                     :    **OPINION AND ORDER**
BUTLER, Deputy Superintendent of Health;            :
JOSEPH AVANZATO, Doctor; JOHN                       :    18 CV 8523 (VB)
HAMMER, Doctor; RONI MAZZA, Nurse;                  :
PAULINE M. LONGKUTOY, Nurse; S.                     :
NTAMBI, Nurse; J. MURRY, Nurse; T.                  :
CODRINGTON, Aide; VICTORIA RELYEA,                  :
Aide; CAPTAIN WEBBE, Corrections Captain;           :
J. SCHMIDT, Correction Officer; and J.              :
LANDOL, Correction Counselor,                       :
                Defendants.            :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Jose Shomo, proceeding pro se and in forma pauperis, brings this action against Nurse Barbara Furco, Dr. Mary Genovese, Superintendent William Connolly, Deputy Superintendent Paula Butler, Dr. Joseph Avanzato, Dr. John Hammer, Nurse Roni Mazza, Nurse Pauline M. Longkutoy, Nurse S. Ntambi, Nurse J. Murry, Aide T. Codrington, Aide Victoria Relyea, Corrections Captain Webbe, Corrections Officer J. Schmidt, and Corrections Counselor J. Landol.[1]  Liberally construed, plaintiff alleges violations of his First and Eighth Amendments, as well as the American with Disabilities Act of 1990 ("ADA") and the ADA Amendments Act of 2008.

---

[1]     Nurse Roni Mazza was sued as Roni Mazda and Corrections Counselor J. Landol was sued as Corrections Counselor Landeau.  (See Doc. #45 ("Defs. Mem.") at ECF 8).

      "Doc. #__ at ECF __" refers to the page numbers automatically assigned by the Court's Electronic Case Filing system.

1

Now pending is defendants' motion to dismiss the complaint pursuant to Rule 12(b)(1) and 12(b)(6). (Doc. #44).

For the reasons set forth below, the motion is GRANTED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

**BACKGROUND**

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in plaintiff's favor, as set forth below.

I.  Factual Background

Plaintiff's complaint alleges a number of constitutional violations which occurred between March 18, 2012, and December 2, 2013, while plaintiff was incarcerated at Sing Sing Correctional Facility ("Sing Sing") in Ossining, New York, and at Fishkill Correctional Facility ("Fishkill") in Beacon, New York. According to plaintiff, during the complained-of events through the present, he has been a quadriplegic.

   A.  Incarceration at Sing Sing

Plaintiff alleges that on March 18, 2012, Nurse Furco instructed him to take medication from a cup by "grab[bing] the cup with [his] teeth" because plaintiff could not use his hands. (Doc. #2 ("Compl.") ¶ 9). Plaintiff alleges that as he tried to take the medication in this manner, he hit a table and "fell face first onto the floor." (Id.). Plaintiff claims that after his fall, Nurse Furco refused to examine him despite his complaints of chest pains and leg paralysis.

Plaintiff alleges that the following day, he was taken to Mount Vernon Hospital. Plaintiff claims that after receiving diagnostic testing at the hospital, he was returned to Sing Sing on March 30, 2012, with orders that he should receive assistance with activities of daily living

("ADLs"), including eating, bathing, going to the bathroom, and being repositioned every two hours.  Plaintiff alleges, however, that from that point until May 9, 2012, prison personnel did not assist him with ADLs at Dr. Genovese and Nurse Furco's orders.  Indeed, plaintiff alleges prison personnel failed to assist him with eating, which effectively starved him and caused him to be hospitalized several times.

> B. <u>Incarceration at Fishkill</u>

Plaintiff was transferred to Fishkill on May 29, 2012.  He alleges that various Fishkill personnel retaliated against him for grievances he had filed against Nurse Furco while he was at Sing Sing:  (i) Nurses Longkutoy and Ntambi lowered the thermostat in his cell to thirty-five to forty degrees and refused to provide blankets; (ii) Dr. Avanzato, Dr. Hammer, and Deputy Superintendent Butler ordered plaintiff be placed in a reclining chair over plaintiff's objections; and (iii) Dr. Avanzato, Dr. Hammer, and Deputy Superintendent Butler ordered Nurse Longkutoy to remove plaintiff's hands from underneath blankets to expose him to the cold.

Plaintiff further alleges that from June 26, 2012, through December 19, 2012, prison personnel served plaintiff food that was "ice cold or spoiled," causing dehydration and resulting in his hospitalization, because he had filed complaints against Nurses Ntambi and Longkutoy. (Compl. ¶ 23).  In addition, plaintiff alleges that from December 31, 2012, through his transfer out of Fishkill on December 2, 2013, Dr. Avanzato, Dr. Hammer, Deputy Superintendent Butler, Nurse Longkutoy, and Nurse Ntambi refused to properly assist plaintiff in eating his meals and would only sometimes hand feed him.

In addition, plaintiff alleges that on August 3, 2012, Superintendent Connolly issued written orders prohibiting all prison personnel and all inmates from assisting plaintiff in writing correspondence, legal or otherwise.

Plaintiff states that on or about September 22, 2012, Aides Relyea and Codrington "water board[ed]" him.  (Compl. ¶ 42).  He also claims that starting November 15, 2012, Superintendent Connolly, Deputy Superintendent Butler, Dr. Avanzato, and Dr. Hammer "torture[d]" him by ordering that his lights "remain on 24 hours a day and [were] not to be dimmed or turn[ed] off for any reason," preventing plaintiff from sleeping.  (Id. ¶ 43).

Plaintiff also alleges he was assaulted by prison personnel on December 21, 2012, January 15, 2013, January 31, 2013, February 5, 2013, and May 14, 2013, and that after several of these instances, he was hospitalized from the injuries he sustained.

Furthermore, plaintiff alleges that for the entirety of his incarceration at Fishkill, which ended on December 2, 2013, various prison personnel, including Nurses Ntambi, Mazza, Murry and Longkutoy, denied plaintiff his medication and then made false entries in medical records that plaintiff had refused the medication.

On December 2, 2013, plaintiff was transferred from Fishkill to Coxsackie Correctional Facility ("Coxsackie").  In December 2015, plaintiff was transferred to Wende Correctional Facility ("Wende"), and on November 27, 2017, he was transferred Mohawk Correctional Facility's Walsh Regional Medical Unit ("Mohawk").

II.     Plaintiff's Prior Lawsuit

On August 25, 2015, plaintiff commenced an action in the United States District Court for the Northern District of New York, alleging claims against the New York State Department of Corrections and Community Supervision ("DOCCS") and Corision Health Services ("Corision") for Section 1983 violations for denial of access to courts and for violations of the ADA and Rehabilitation Act of 1973 respecting access to certain programs and services from June 2012 through the commencement of that action.  See Shomo v. DOCCS, 15 Civ. 1029

(GLS) (ATB) (N.D.N.Y) ("Shomo I").[2] Plaintiff was incarcerated at Fishkill and Coxsackie at the time of those complained-of events.

By order dated November 18, 2015, the court in Shomo I dismissed without prejudice the denial of access to courts claim against both defendants, and the ADA and Rehabilitation Act claims against Corision. DOCCS answered the complaint, and the parties conducted discovery. On March 29, 2018, plaintiff filed a proposed amended complaint, re-asserting the ADA and Rehabilitation Act claims against DOCCS and Corision, as well as the denial of access to courts claims against new proposed defendants. (See Shomo I, Doc. #78).[3] In addition, plaintiff alleged new Section 1983 claims for violations of the Eighth Amendment for deliberate indifference to serious medical needs and conditions of confinement; for excessive force; and for First Amendment retaliation claims based on events that occurred between 2012 and 2015 while plaintiff was incarcerated at Sing Sing, Fishkill, and Coxsackie. (Id.). Included within these new Section 1983 claims were essentially the same claims as alleged in the instant case based on events at Sing Sing and Fishkill, as well as other Section 1983 claims not alleged in the instant action (that is, claims alleged to have arisen out of events at Coxsackie).

On June 18, 2018, the court granted in part and denied in part plaintiff's motion to amend his complaint, allowing only the following claims to proceed: an access to the courts claim

---

[2] The Court takes judicial notice of public records from plaintiff's prior legal proceedings, which are related to plaintiff's claims here. See Jackson v. New York State, 523 F. App'x 67, 68 (2d Cir. 2013) (summary order) ("Matters subject to judicial notice—such as decisions [in] related proceedings—are properly considered on a motion to dismiss and do not require the court to consider the motion as one for summary judgment."). Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations. Because plaintiff is proceeding pro se, he will be provided copies of all unpublished opinions cited in this ruling. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

[3] Citations to "Shomo I, Doc. #__" refer to documents filed in Shomo v. DOCCS, 15 Civ. 1029 (GLS) (ATB) (N.D.N.Y).

against Fishkill Superintendent Connolly and the Coxsackie superintendent, and ADA and Rehabilitation Act claims against DOCCS.  (See Shomo I, Doc. #81 at ECF 23–25).  The court found that the other claims had "nothing to do with the alleged denial of privileges detailed in the original complaint" and denied plaintiff's motion to amend as to those claims.  (Id. at 24).

III.    The Instant Case

On September 17, 2018, plaintiff commenced the instant action, alleging claims dating back to 2012 and 2013 while plaintiff was incarcerated at Sing Sing and Fishkill.  These claims were among the ones the plaintiff alleged in his proposed amended complaint in Shomo I, but for which the court there denied leave to amend.  On December 11, 2018, in this case, noting that "[t]he face of the complaint indicates that this action is time-barred," Judge Stanton of this Court ordered plaintiff to show cause why equitable tolling applies.  (Doc. #7 at ECF 5).[4]

On January 3, 2019, plaintiff filed an affidavit in response to the December 11, 2018, Order, alleging extraordinary circumstances supported equitable tolling.  (See Doc. #8 ("Equitable Tolling Affidavit")).  Plaintiff alleges his delay in filing the instant action is due to actions by prison personnel:  (i) that from August 3, 2012, to August 15, 2015, prison personnel at Fishkill and Coxsackie ordered that neither prison staff nor other inmates could assist plaintiff as a "scribe" to write plaintiff's legal correspondence (id. at ECF 2); (ii) that on August 15, 2015, the Coxsackie superintendent allowed plaintiff to file a complaint but did not allow him to name any DOCCS staff as defendants, which the superintendent enforced by assigning an officer to monitor all of plaintiff's outgoing mail; (iii) that upon his transfer to Wende in December 2015, prison personnel "prohibit[ed] anyone except security staff from entering plaintiff's room [and] deprive[d] plaintiff of 'ALL' his personal property including all legal papers" (id. at ECF 3); and

---

[4]    On February 11, 2019, this case was reassigned to the undersigned.

(iv) Mohawk personnel did not allow a law clerk to visit his cell while he was on "disciplinary/keep-lock/confinement status" (id.).  Given the liberal rules regarding amendments to pleadings and plaintiff's pro se nature, the Court construes the Equitable Tolling Affidavit as an amendment to the complaint.[5]

## DISCUSSION

I.   Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

---

[5] See Fonte v. Bd. of Mgers. of Continental Towers Condo., 848 F.2d 24, 25–26 (2d Cir. 1988); cf. Vlad-Berindan v. MTA N.Y.C. Transit, 2014 WL 6982929, at *6 (S.D.N.Y. Dec. 10, 2014) ("In evaluating the legal sufficiency of a pro se plaintiff's claims, a court may rely on the plaintiff's opposition papers.").

In considering a motion to dismiss, a district court may consider the complaint's factual allegations, matters subject to judicial notice, documents integral to the complaint, and documents incorporated into the complaint by reference. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

The Court must liberally construe submissions of pro se litigants and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (collecting cases). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). Nor may the Court "invent factual allegations" plaintiff has not pleaded. Id.

However, "a pro se litigant's experience with and knowledge of both the legal system in general and the particular procedural context at issue are certainly factors that a court should consider when determining the degree of solicitude to afford that litigant." Tracy v. Freshwater, 623 F.3d 90, 103 (2d Cir. 2010). Here, plaintiff is "an extremely litigious inmate who is quite familiar with the legal system and with pleading requirements." Davidson v. Flynn, 32 F.3d 27, 31 (2d Cir. 1994). He is currently litigating at least two additional Section 1983 claims. See Shomo v. State of New York, et al., 18 Civ. 916 (W.D.N.Y.); Shomo v. New York State Dep't of Corr., 20-583 (2d. Cir.). Moreover, in 2007, plaintiff's special pro se litigant status was revoked in a different case where he had brought ADA and Section 1983 claims because plaintiff filed at least ten lawsuits and appeals, was familiar with court procedure, and had testified he was a

8

paralegal who taught other inmates about legal resources.  See Shomo v. State of New York et al., 04 Civ. 910 (N.D.N.Y. Aug. 6, 2007) (Doc. #89 at ECF 13–15, adopted by Doc. #93).  "Therefore, the deference usually granted to pro se plaintiffs need not be expansively drawn in this case."  Johnson v. Eggersdorf, 8 F. App'x 140, 143 (2d Cir. 2001) (summary order).

II.     Statute of Limitations

The three-year statute of limitations for personal injury actions under New York State law governs claims brought under Section 1983 and the ADA.  Shomo v. City of New York, 579 F.3d 176, 181 (2d Cir. 2009) (1983 claims); Stewart v. New York City Transit Auth., 2006 WL 270100, at *8 (S.D.N.Y. Feb. 6, 2006) (ADA claims).  "A Section 1983 claim ordinarily accrues when the plaintiff knows or has reason to know of the harm."  Shomo v. City of New York, 579 F.3d at 181.  Defendants must establish the expiration of the statute of limitations because "a pre-answer motion to dismiss on this ground may be granted only if it is clear on the face of the complaint that the statute of limitations has run."  Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A., 14 F. Supp. 3d 191, 209 (S.D.N.Y. 2014).

Here, plaintiff alleges the conduct giving rise to his claims occurred between March 18, 2012, and December 2, 2013.  Plaintiff filed his complaint on September 17, 2018, nearly two years after the three-year statute of limitations expired on December 2, 2016.  Accordingly, plaintiff's claims are time-barred unless equitable tolling applies.

III.    Equitable Tolling

Defendants argue plaintiff fails to meet his burden to show equitable tolling applies.

The Court agrees.

A.      Legal Standard

"Because statutes of limitations protect important social interests in certainty, accuracy,

9

and repose, equitable tolling is considered a drastic remedy applicable only in 'rare and exceptional circumstances.'" A.Q.C. ex rel. Castillo v. United States, 656 F.3d 135, 144 (2d Cir. 2011) (quoting Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000)). To toll a statute of limitations, a plaintiff "must show that extraordinary circumstances prevented him from filing his [complaint] on time" and that "he acted with reasonable diligence throughout the period he seeks to toll." Smith v. McGinnis, 208 F.3d at 17.

A plaintiff should be provided "notice and an opportunity to be heard on his tolling arguments" before a case is dismissed. See Abbas v. Dixon, 480 F.3d 636, 639–40 (2d Cir. 2007). "The plaintiff bears the burden of showing that the action was brought within a reasonable period of time after the facts giving rise to the equitable tolling . . . have ceased to be operational." Id. at 642. "If a plaintiff cannot articulate any acts by defendants that prevented him from timely commencing suit then he has failed to meet his burden of showing that he was wrongfully induced by defendants not to commence suit." Id.

To show that extraordinary circumstances "prevented" a plaintiff from filing his complaint on time, he "must demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the [plaintiff], acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." Hizbullahankhamon v. Walker, 255 F.3d 65, 75 (2d Cir. 2001). Thus, "if the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing." Id. (emphasis in original).

"Equitable tolling is generally not available where the circumstances that a plaintiff claims prevented him from timely filing were within the plaintiff's control." Myers v. New York, 2016 WL 2636295, at *5 (N.D.N.Y. May 9, 2016). Indeed, courts in this circuit have held that when a circumstance results from a plaintiff's own misbehavior, it is it not extraordinary for purposes of equitable tolling. See, e.g., Hizbullahankhamon v. Walker, 105 F. Supp. 2d 339, 344 (S.D.N.Y. 2000) (holding placement in solitary confinement for misbehavior without access to law library, coupled with additional delay, did not constitute extraordinary circumstances), aff'd, 255 F.3d 65 (2001). For instance, "even if placement in solitary confinement is a severe obstacle to pursuing legal rights, the obstacle resulted from the [plaintiff]'s own improper conduct . . . and ordinarily is not for reasons beyond [plaintiff's] control." Adkins v. Warden, 585 F. Supp. 2d 286, 296–98 (D. Conn. 2008) (declining to apply equitable tolling based on placement in solitary confinement because that "would only reward that [plaintiff] with additional filing time as a result of his own misbehavior"), aff'd, 354 F. App'x 564 (2d Cir. 2009) (summary order).

Moreover, "[r]outine experiences of prison life do not qualify as extraordinary circumstances." Brown v. Bullis, 2013 WL 1294488, at *4 (N.D.N.Y. Mar. 26, 2013). "Courts have found that solitary confinement, lock-downs, and restricted access to the law library do not qualify as 'extraordinary circumstances' warranting equitable tolling." Belot v. Burge, 2005 WL 6777981, at *8 (S.D.N.Y. July 14, 2005) (collecting cases).

B. Application

As an initial matter, plaintiff is incorrect that "'[e]quitable tolling' has 'already been granted" because he responded to Judge Stanton's December 11, 2018, Order. (See Doc. #46 (Pl. Opp.) ¶ 3). That Order directed plaintiff to show cause why this action should not be

dismissed as untimely but made no ruling on the applicability of equitable tolling to this case. (See Doc. #7).

In addition, the Court notes plaintiff has had notice and an opportunity to be heard on his tolling arguments. In the complaint, plaintiff alleges the case is "being submitted outside the time limi[t]at[]ions period because" defendants "deprived plaintiff of his rights to[] timely file these claims. . . . Plaintiff will also be seeking 'Equitable Tolling' of the statute of limitations." (Compl. ¶ 4). Plaintiff subsequently filed the Equitable Tolling Affidavit detailing the allegedly extraordinary circumstances he faced. Plaintiff also has had an opportunity to respond to defendants' equitable tolling arguments in his opposition to the motion to dismiss.

Nevertheless, the Court concludes that plaintiff has failed to carry his burden to show that equitable tolling is warranted in this case.

First, plaintiff has not carried his burden to show that being deprived a scribe and law clerk are extraordinary circumstances. Indeed, plaintiff's own submissions indicate these deprivations were due to plaintiff's own misbehavior. For instance, in the August 3, 2012, memorandum from Superintendent Connolly to plaintiff, which plaintiff attaches to his complaint, Superintendent Connolly states that although he met with plaintiff upon his transfer to Fishkill to "discuss[] certain privileges [Connolly] would provide [plaintiff] with as a mechanism of gaining [plaintiff's] compliance [with basic civility]," plaintiff had continued to be "disruptive, vulgar[,] and lacking in basic civility" and had "thus far misused the privileges [Connolly] afforded [plaintiff]." (Compl. at ECF 70). Connolly explained that as a result of plaintiff's "abuses and . . . refus[al] to cooperate in [] attempts to assist" plaintiff, including by "harass[ing]" and "disrespect[ing]" staff, Connolly was "left with little choice but to rescind the

extra privileges that [Connolly had] made available to [plaintiff] that are not normally afforded to an offender in DOCCS," including a scribe. (Id.).

Similarly, the April 29, 2016, declaration of Robin Neal, Deputy Superintendent of Health at Wende that plaintiff attaches to the Equitable Tolling Affidavit indicates that plaintiff's lack of access to a law clerk was "within the plaintiff's control." See Myers v. New York, 2016 WL 2636295, at *5. For instance, Neal attested, "[t]he only reason a law clerk would not stop to see and assist plaintiff would be because of bad behavior" and that plaintiff "often behaves poorly." (See Equitable Tolling Affidavit at ECF 7).

Moreover, lack of assistance from other inmates is not an extraordinary circumstance. See Crespo v. Comm'r of Correction, 2011 WL 4633542, at *3 (D. Conn. Oct. 4, 2011) (no equitable tolling when, among other circumstances, inmates were not allowed to assist plaintiff).

Second, plaintiff fails to carry his burden to show he acted with reasonable diligence during the time to be tolled. Indeed, plaintiff commenced another lawsuit during the applicable limitations period, which included allegations of wrongdoing during the same time period as the claims alleged here (see Shomo I, Doc. #1), and then allowed the applicable limitations period to expire before commencing this action.

Indeed, even if plaintiff's allegations are true that the Coxsackie personnel prohibited him from naming individuals in any lawsuit he filed, including by monitoring his outgoing mail, plaintiff does not make any showing that he took actions while at Coxsackie to file the claims he brings in the instant action. In addition, plaintiff has not shown he acted with reasonable diligence to file his complaint once the extraordinary circumstances at Coxsackie were removed. Plaintiff was transferred from Coxsackie to Wende in December 2015. Because approximately one year remained for plaintiff timely to file his Section 1983 claims after being transferred from

Coxsackie, plaintiff fails to establish a sufficient causal relationship between this purportedly extraordinary circumstance on which his claim for equitable tolling rests and his late filing. See Adkins v. Warden, 354 F. App'x at 566 (finding district court did not err in holding no equitable tolling when extraordinary circumstances took place early in the statute of limitations); Hizbullahankhamon v. Walker, 255 F.3d at 75 (noting that causal relationship cannot be established if plaintiff, "acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances").

Plaintiff suggests he was unable to file these claims from Wende because he was allegedly deprived of his legal papers. However, plaintiff "does not specify which legal papers were missing, which of these papers were necessary to the filing of his [complaint], or whether he ever received duplicate copies of these papers from any other source." Tamayo v. United States, 2008 WL 417674, at *4 (S.D.N.Y. Feb. 13, 2008). Plaintiff does not "state whether he now has these papers or whether these papers were actually needed to prepare" his complaint. Id. Further, "[p]laintiff has not shown that he made any effort to file his complaint without [such papers], which further evinces a lack of diligence." See Brown v. Bullis, 2013 WL 1294488, at *5. And even though plaintiff alleges he was deprived of his legal papers at Wende, plaintiff made numerous filings in Shomo I while at Wende. Yet he did not commence the instant action until almost two years after the statute of limitations expired and only after he was denied an opportunity to amend his complaint in Shomo I.[6]

---

[6] Plaintiff also alleges that after his November 27, 2017, transfer to Mohawk, he was impeded from filing court papers because facility rules prohibit inmates on disciplinary, keep-lock, or confinement status from having law clerks visit their room. However, even if the limitations period had not already passed by the time he was transferred to Mohawk, placement in disciplinary, keep-lock, or confinement status does not merit equitable tolling. See Adkins v. Warden, 585 F. Supp. 2d at 296–98 (applying equitable tolling based on placement in solitary confinement "would only reward [plaintiff] with additional filing time as a result of his own misbehavior").

14

Because the Court concludes plaintiff has not met his burden of showing equitable tolling is warranted, the Court need not reach defendants' other arguments in support of their motion.

Accordingly, defendants' motion to dismiss must be granted.

IV.     Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure instructs that courts "should freely give leave" to amend a complaint "when justice so requires." Liberal application of Rule 15(a) is warranted with respect to pro se litigants, who "should be afforded every reasonable opportunity to demonstrate that [they have] a valid claim." Matima v. Celli, 228 F.3d 68, 81 (2d Cir. 2000). District courts "should not dismiss [pro se complaints] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000). But "a futile request to replead should be denied." Id. An "amendment is considered futile and leave may be appropriately denied when the statute of limitations for asserting the amended claim has expired." See Ellis v. Kelly, 2019 WL 1243760, at *4 (E.D.N.Y. Mar. 18, 2019).

The complaint, even liberally construed, does not contain allegations suggesting plaintiff has a timely claim against the defendants, or that plaintiff has a claim that he has merely "inadequately or inartfully pleaded" and therefore should "be given a chance to reframe." Cuoco v. Moritsugu, 222 F.3d at 112. On the contrary, the Court finds that repleading would be futile because the problems with plaintiff's claims are "substantive," such that "better pleading will not cure [them]." Id.

Accordingly, the Court declines to grant plaintiff leave to amend.

15

## CONCLUSION

The motion to dismiss is GRANTED.

The Clerk is instructed to terminate the motion (Doc. #44) and close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Dated: July 20, 2020
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge